**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 24-2199

CRAIGE ROBINSON,

Plaintiff – Appellant,

v.

MOUNTAIRE FARMS OF NORTH CAROLINA CORP.,

Defendant – Appellee.

Appeal from the United States District Court for the Eastern District of North Carolina, at Wilmington.  James C. Dever, III, District Judge.  (7:23-cv-01041-D-BM)

Submitted:  November 5, 2025                          Decided:  February 4, 2026

Before AGEE, RICHARDSON, and BENJAMIN, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ON BRIEF:**  Ralph T. Bryant, Jr., RALPH BRYANT LAW FIRM, Greenville, North Carolina, for Appellant.  J. Larry Stine, Elizabeth K. Dorminey, WIMBERLY, LAWSON, STECKEL, SCHNEIDER & STINE, P.C., Atlanta, Georgia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

This appeal stems from Mountaire Farms' decision to terminate Craige Robinson's employment. Robinson began working for Mountaire at a chicken-processing plant in February 2016. Two years later, he was promoted to the salaried position of "rehang supervisor," a title he held through the termination of his employment. J.A. 566. But in 2021, he was seriously injured at an event unrelated to his job. The ensuing injuries required surgery and an extended recovery, for which Robinson took leave under the Family and Medical Leave Act (FMLA). They also necessitated significant restrictions on Robinson's return to work. Mountaire was skeptical of those restrictions given the physical nature of Robinson's job. Robinson and Mountaire subsequently engaged in an interactive process to determine what, if any, accommodations could be made to allow Robinson to continue working for Mountaire. That endeavor was unsuccessful, and Mountaire eventually terminated Robinson's employment when his FMLA leave expired.

This lawsuit followed. In relevant part, Robinson alleged that Mountaire's actions constituted unlawful termination in violation of the Americans with Disabilities Act (ADA), failure to accommodate under the ADA, and a per se violation of the ADA. Mountaire moved for summary judgment on all those claims, which the district court granted in full. Robinson challenges that decision on appeal. For the reasons that follow, we affirm the district court's decision.

I.

A.

Robinson was hired by Mountaire Farms of North Carolina Corporation in 2016 as an hourly employee. In 2018, he was promoted to "rehang supervisor"—a salaried position. J.A. 566. Working as a rehang supervisor involved interviewing, training, and developing employees; ensuring the product meets customer specifications; ensuring machinery operates efficiently; and ensuring employee safety, welfare, wellness, and health. J.A. 236–37, 566; *see* J.A. 566 (outlining remaining supervisory and administrative responsibilities).

Beyond the responsibilities of the job, the work environment itself entailed exposure to extreme temperature ranges, wetness and humidity, and high noise levels; working with, around, and near machinery and high speed assembly lines; occasional reaching, bending, steeping, pushing, pulling, and lifting; and frequent standing and walking.

In terms of day-to-day responsibilities, Robinson was tasked with "supervising six lines of workers as they took chilled chickens off conveyors and rehung the chickens for further processing, managing staffing on the lines, completing administrative paperwork, and managing the ice house." J.A. 567. To perform these duties, Robinson spent roughly 75–80% of his time "walking the lines to ensure that the work proceeded smoothly." *Id.* He also sometimes "voluntarily worked on the line himself to allow his leads to perform other tasks." *Id.* "The floor Robinson supervised did not have a chair or any other seating." *Id.*

On August 29, 2021, an unknown assailant shot Robinson at a neighborhood cookout resulting in serious injuries to his elbow and hip. Those injuries required two

3

surgeries, several days in the hospital, and an extended recovery period. Given the anticipated recovery timeline, Mountaire placed Robinson on FMLA leave. On September 15, 2021, and again on October 5, 2021, Mountaire told Robinson that he would exhaust his FMLA leave on October 19, 2021, but would be eligible for long-term disability benefits thereafter.

On October 8, 2021, Robinson's doctor cleared him to return to work on October 20, 2021, with various restrictions until he could be reevaluated the following month. In particular, Robinson was permitted to perform "seated work only with no use of the left arm and no lifting/pushing/pulling greater than five pounds with his right arm." J.A. 567–68 (cleaned up). On October 19, 2021, Robinson exhausted his FMLA leave and returned to work the following day "wearing a brace and still experiencing pain." J.A. 568.

Robinson requested another leave of absence from November 2, 2021, to November 15, 2021. Mountaire granted his request and allowed Robinson to use the remaining balance of his vacation time for this period. At his follow-up appointment on November 5, Robinson's doctor maintained his restrictions for seated work only; no use of his left arm; and no lifting, pushing, or pulling greater than five pounds with his right arm until he was reevaluated two months later.

Following his restrictions update, Robinson engaged in Mountaire's "interactive process when an employee requests ADA accommodations to determine whether or how they can be met." J.A. 137; *see* J.A. 198–99 (Robinson's testimony agreeing that there was "a lot of back and forth between Mountaire and [his] doctors trying to evaluate what [his] capabilities . . . were, moving toward an idea of [his] returning to work"). As part of that

4

process, Mountaire provided Robinson with a list of physical demands for his job. That list included: "(1) must be able to stand and walk for long periods of time continuously; (2) must be able to lift and carry up to 50 pounds, occasionally; (3) must be able to climb and descend stairs occasionally, including bending, kneeling, and reaching overhead; (4) must be able to push and pull occasionally; (5) must be able to handle a wet and cold environment; (6) must ensure all safety inspection sheets and [personal protective equipment] inspections are completed; (7) must monitor daily set-up of department; (8) must be able to effectively manage the day-to-day production process of the assigned area; and (9) must ensure all vacation requests, attendance reports, and lunch wash downs are completed." J.A. 568.

Robinson provided this list to his doctor, who examined him on November 22, 2021. Following that visit, his doctor revised his work restrictions as follows: "no ladders; no use of left arm; no lifting/pushing/pulling greater than five pounds with his right arm; [and] sedentary work with no standing/walking more than one to four hours a day and has to sit [fifteen] minutes every hour," until he was reevaluated on January 4, 2022.[1] J.A. 569 (cleaned up).

On November 23, 2021, Robinson met with Marcus Bell, the plant manager, and Jeff Covington, the plant superintendent. After the meeting, Bell took Robinson's paperwork to human resources and then told Robinson to go to human resources.

---

[1] The parties dispute whether Mountaire "engaged in multiple exchanges with Robinson and his doctor to determine what medical restrictions were necessary and whether it would be possible to accommodate those restrictions." J.A. 569 (cleaned up).

5

While there, Bobbie Cogdell, Mountaire's director of occupational health, reviewed Robinson's restrictions. Cogdell, together with Bell, David White (Mountaire's director of processing), Terry Williams (Mountaire's director of human resources), and Pamela Webster (Mountaire's complex human resources director), "determined that Mountaire could not reasonably accommodate Robinson in the rehang supervisor position." J.A. 569. They also "determined that there were no available, vacant positions that Robinson could perform consistent with his doctor's restrictions." *Id.* (cleaned up). So on November 30, 2021, Webster terminated Robinson's employment due to his physical restrictions, exhaustion of all available leave, and the unavailability of any suitable vacant positions. Webster also informed Robinson that he would be eligible for reemployment should his condition improve, and that he could still submit a claim for long-term disability benefits.

## B.

Following the events detailed above, Robinson sued Mountaire, alleging that it violated the ADA by failing to accommodate his disabilities, terminating his employment, and maintaining a policy that employees need to be 100% healed before returning to work.[2] The case proceeded through discovery, after which Mountaire moved for summary judgment on all of Robinson's claims.

The district court granted Mountaire's motion in full. It did so based on its conclusion that Robinson was not a "qualified individual" as that term is defined by the

---

[2] Robinson also brought a Title VII claim, but the district court disposed of that claim at the summary judgment stage, and Robinson does not revive it on appeal.

ADA, because he could not, "with or without reasonable accommodation, . . . perform the essential functions of the" rehang supervisor position. J.A. 574 (quoting 42 U.S.C. § 12111(8)); *see* J.A. 581. This finding, in the court's view, was fatal to Robinson's ADA wrongful termination *and* failure-to-accommodate claims.

The district court also rejected Robinson's claim that Mountaire "committed a *per se* ADA violation by maintaining a policy that an employee must obtain medical clearance from all restrictions before returning to work." J.A. 581. It did so because Mountaire's admission "that it required Robinson to be cleared of all restrictions before he returned to work" pertained "*only . . . to Robinson* and the particular circumstances of *his* restrictions and potential return to work." *Id.* (emphases added). In other words, the district court found that Mountaire had no policy requiring *all* employees to obtain full medical clearance to return to work following injury. It simply required a fuller recovery in Robinson's case given the demands of *his* job.

Robinson timely appealed, and this Court has jurisdiction under 28 U.S.C. § 1291.


II.

This Court reviews a grant of summary judgment de novo, "applying the same legal standards as the district court and viewing all facts in the light most favorable to the nonmoving party." *W.C. Eng., Inc. v. Rummel, Klepper & Kahl, LLP*, 934 F.3d 398, 402–03 (4th Cir. 2019) (cleaned up). Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

7

III.

There are two issues on appeal: (1) whether the district court erred in granting summary judgment in Mountaire's favor on Robinson's ADA wrongful termination and failure-to-accommodate claims on the basis that he is not a "qualified individual" under the ADA, and (2) whether the district court erred in concluding that Mountaire's policies are not a per se violation of the ADA. We take these up in turn below.

A.

We begin with Robinson's wrongful termination and failure-to-accommodate claims. Those claims share a common element—a showing from Robinson that he was a "qualified individual" at the time of the events in question. *Jessup v. Barnes Grp., Inc.*, 23 F.4th 360, 365 (4th Cir. 2022); *see Ross v. Ind. State Tchr.'s Ass'n Tr.*, 159 F.3d 1001, 1013 (7th Cir. 1998) (noting that the "qualified individual" inquiry focuses on "the time of the employment decision" (citation omitted)). The ADA defines a "qualified individual" as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Jessup*, 23 F.4th at 365 (quoting 42 U.S.C. § 12111(8)).

After recounting the evidence, the district court concluded that Robinson failed to establish that he was a qualified individual. And for that reason, it granted Mountaire's motion for summary judgment on Robinson's wrongful termination and failure-to-accommodate claims. We discern no error in this conclusion.

8

In short, the record reflects that Robinson was unable to "perform the essential functions" of the rehang supervisor position (or any other vacant position) when Mountaire terminated his employment. *Compare, e.g.*, J.A. 566 (noting that Robinson's work environment required "frequent[] stand[ing] and walk[ing]," "occasional[] reach[ing], bend[ing], stoop[ing], push[ing], pull[ing], and lift[ing]"), *and* J.A. 567 (detailing Robinson's testimony that he was on his feet for 75–80% of each shift), *with* J.A. 578 (outlining Robinson's restrictions, which included "walking or standing no more than four hours a day, with fifteen minutes of rest every hour, no use of his left arm, no use of ladders, and no lifting, pushing, or pulling more than five pounds with his right arm").

While Robinson resists this conclusion, his own testimony established that he could not perform the essential functions of the position. He was therefore not a "qualified individual" when his employment was terminated—a finding that dooms his wrongful termination and failure-to-accommodate claims.

## B.

Next, we turn to Robinson's per se ADA violation claim. He contends that Mountaire committed a per se violation of the ADA by maintaining a policy that required employees to obtain full medical clearance before returning to work. For support, he cites certain of Mountaire's admissions in discovery as confirmation that it maintained such a policy. *See* J.A. 581. We disagree.

As the district court correctly recognized, a careful review of the relevant allegations and admissions reveals that "Mountaire's admissions only pertain to Robinson and the particular circumstances of *his* restrictions and potential return to work." J.A. 581

9

(emphasis added). *Compare* J.A. 10–12 (¶¶ 19, 22, 27, and 28 of Robinson's complaint), *with* J.A. 36–38 (corresponding portion of Mountaire's answer). So contrary to Robinson's claim, Mountaire never admitted to maintaining a "100% healed" policy across the board. *See* J.A. 581 ("Mountaire's answer admits that *Robinson* could not return to work without medical clearance from his restrictions because [he] could not perform the essential functions of *his* job with or without reasonable accommodations." (cleaned up) (emphasis added)).

The undisputed factual record likewise defeats Robinson's claim that Mountaire maintained any such policy. Again, Robinson's own testimony contradicts the claims he presses on appeal. To that end, all agree that Mountaire has (1) provided accommodations to other employees who *could* perform the essential functions of their job with those accommodations, and (2) allowed other employees to come back to work with certain restrictions, so long as those restrictions did not prevent the employee from performing all the essential functions of their job. *See* J.A. 570; *see also* J.A. 139–40 (Mountaire's statement of undisputed facts); J.A. 416–17 (Robinson's statement of undisputed facts). And Mountaire worked extensively with Robinson to see whether any accommodations could be made for his position. On these facts, Mountaire can hardly be said to have a "100% healed policy." Accordingly, Robinson's per se ADA claim fails.

IV.

For the foregoing reasons, the district court's judgment is

*AFFIRMED.*

10